ARTHUR D. FLANSBERG *vs.* HEYWOOD BROTHERS AND
WAKEFIELD COMPANY.

Suffolk.    November 16, 17, 1905. — January 3, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence.*

In an action by a freight brakeman against a manufacturer of articles made from rattan for injuries from being crushed between a pile of rattan near a branch track in the defendant's yard and a moving car on the side of which was the plaintiff, it appeared that the yard continuously was in a much crowded condition and that it was a custom to pile rattan in the spaces between the buildings wherever a vacant space could be found, that the pile of rattan with which the plaintiff came in collision was beside a brick building which was just beyond it and nearer the track, that the plaintiff had been a freight brakeman for a year and a half and had switched cars in this yard almost daily for about six months before he was injured, that the car upon which he was injured was of unusual width, that it frequently came in contact with buildings beside the track in the yard and when it tipped sometimes had touched the brick building mentioned above, that he knew all of these facts, as well as the fact that rattan sometimes was piled where he was injured, that when he was injured the car was moving at the rate of about four miles an hour, that he either was ascending the ladder at the side of the car or had his foot in the stirrup, and was not facing or looking in the direction in which the car was going. *Held,* that there was no evidence that the plaintiff was in the exercise of due care.

TORT for personal injuries as stated in the opinion. Writ dated June 4, 1901.

At the trial in the Superior Court before *Hitchcock,* J. the defendant asked the judge to rule: " 1. Upon all the evidence in this case the plaintiff is not entitled to recover against the defendant. 2. The danger from the usual crowded condition of a freight yard from its being inadequate for the business there transacted is a risk which a freight brakeman working there assumes. Upon the evidence in this case the plaintiff is not entitled to recover."

The judge refused to rule as requested, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $5,500. The defendant alleged exceptions.

*G. F. Piper,* for the defendant.

*A. H. Russell,* for the plaintiff.

KNOWLTON, C. J.    The plaintiff, a brakeman employed by

the Boston and Maine Railroad, was injured by being crushed between the side of a moving car and a pile of·rattan, placed by the defendant company near the track on which the car was moving. A branch track extended from the main track of the railroad company into the yard of the defendant. In the yard the track branched in various directions, along the sides of buildings used as storehouses, leaving open spaces at various points in the yard. The grounds of the defendant covered several acres surrounded by a high fence, and were in part covered with buildings used for storage, and for the manufacture of goods from reeds and rattan. The part of the yard where the tracks were located was used for the reception and delivery of freight on cars owned and operated by the railroad company. The freight was loaded and unloaded by the employees of the defendant, and the cars were placed in position and taken away by the railroad company.

The train which served the defendant company was known as the Salem freight, and it switched into the yard of the defendant at least once a day, and sometimes oftener, either delivering loaded cars, placing empty cars in position for the reception of freight, or hauling away cars which had been loaded. While in the yard the train switched up and down several tracks, as the business required.

On the right of track one, as you entered the yard, was a scale house, and at a little distance from the entrance, on the same side, was a wooden building with a porch, and then an area extending along the track between buildings, a distance of about thirty feet, and then a brick building standing nearer to the track than the wooden building. On the day of the accident there was a quantity of rattan piled like·cord wood along the line of the track, at one side of it, between the wooden building and the brick building, the bundles being laid regularly in the pile with their bent ends toward the track. The face of the pile at the corner of the brick building was at the same distance from the track as the building itself, and it gradually receded from the track as it extended towards the wooden building.

On the day of the accident a big broad furniture car was being pushed by the engine up track one, from the switch at the scale

house, near the entrance to the yard, and the plaintiff, while riding upon it on the right hand side, with his foot in the stirrup, or on a ladder at the side of the car, came in contact with the pile of rattan and was injured.

The plaintiff had been employed by the railroad company as a brakeman a year and a half, and he had been on the Salem freight train for a period of about six months before the accident. During this time he had been accustomed to go about on the tracks in the defendant's yard, switching cars daily. He testified that, because of the illness of the brakeman who acted as flagman, he had acted as flagman most of the time for three or four weeks before the accident, and his duties then kept him out of the yard most of the time. At the previous trial he had testified that, for five or six weeks before the accident, he was down the track on which he was hurt once or twice a week.

The uncontradicted evidence from a large number of witnesses, those called by the plaintiff as well as those called by the defendant, was that the defendant's freight yard was much crowded, and that it was a custom to pile rattan in the spaces between the buildings, and wherever a vacant space could be found. One Wiley, a witness called by the plaintiff, said, " The rattan is all over the yard. They store it, use the whole yard more or less on each side of the track for sorting. They move it about on a hand-car. . . . When the defendant company is receiving cargo it is a usual experience to find rattan in the place in question." The conductor of the train, called by the plaintiff, testified that " the rattan is changed about from time to time in the yard; that he had seen rattan stacked in the place where it was the morning that Flansberg was hurt, as it was handy to the door; that he could not say how long the rattan had been in that particular space at this time; that the piles changed as they shifted them about, either using a hand-car or carrying it about." On re-cross-examination he testified that he thought the rattan had been in the narrow space between the brick building and the wooden building three or four weeks, but he could not state that it had been in the same substantial condition. The fireman, who was running the engine in the place of the engineer at the time of the accident, and was called as a witness by the plaintiff, testified " that the Salem freight shifted into the yard of the

defendant every day, sometimes twice a day; . . . that he had seen rattan piled most everywhere in the yard; that he had seen rattan in the space between the brick and wooden buildings; that the space was used to store rattan, he supposed; that he noticed there was a pile there, but could not say how long it had been there — it might have been three weeks or a month; that he did not particularly observe it, but he knew the place was there and knew there was rattan there." One Stout, a witness called by the plaintiff, testified in regard to the disposition of the freight, "Rattan is piled in the space between the brick and the wooden building. . . . It is a usual experience to find rattan anywhere over these tracks." Referring to the space between the brick and the wooden building, he said, "This space is not very often vacant. . . . It would be the exception when rattan is not there in some shape." He also testified to the generally crowded condition of the yard. Similar testimony was given by numerous witnesses called by the defendant.

This evidence was entirely uncontradicted, except by the testimony of Grimes, who had been the flagman on this train, and whose duties did not ordinarily take him into the yard. He said he had not seen rattan piled at this place before the accident, but he said, "There was a crowded condition of things, a pretty close place — it runs to a point. That he had seen rattan three or four feet high and might be more." The plaintiff himself also said he had not seen rattan piled in that place before the day of the accident, but he testified that he had seen it in places between the tracks, a couple of feet high. He said: "I have never seen in that yard a pile of rattan high enough to rake me off of the position in which I was on that car or near enough to the track to do it." "I was familiar with that freight yard, with the buildings and with the location of the tracks. . . . It is rather contracted."

With nothing but the negative statement of the two witnesses that they had not seen rattan at this particular place, and with no contradiction of the testimony introduced by both parties as to the character and general mode of use of the yard, we come to the particulars of the accident. The brick building which the plaintiff was about to pass on the car was only three feet and six inches from the track. The plaintiff testified that the

car on which he was riding was " one of the broadest cars used for freight purposes," he had heard " that it was nine feet six and one-half inches."    He further said : " When passing the scale house, the big car was off the centre ; that is, it will tip one way or the other, and when she leaned over toward the scale house, the roof of the car caught the roof of the scale house and scraped.    The scale house was quite close to the track.    All that I know is that it scraped the edge of the shingles of the scale house. . . . The conductor of the freight train remarked to me when we were down on track two or three, ' That is an extra wide car,' and I think I said, ' Yes, it scraped the shingles of the scale house.' . . . I knew the brick building was very close to the track, three and a half or four feet.    I knew the location."    He knew that there was not space enough for the body of a man between the building and the car as it would pass on the track.    Indeed, there was testimony that when the car had tipped, it had sometimes touched the brick building.    The switch at the scale house was one hundred and eighty-two feet from the brick building.    According to the plaintiff's own testimony, which was undisputed in this particular, he stepped upon the stirrup of the car on the right hand side, and rode with his face toward the locomotive that was pushing the car, and without looking forward, until he came in contact with the rattan near the brick building.    He testified that he was climbing the ladder, but did not reach the top of the car before the accident. According to some of the witnesses, he was standing on the stirrup, with his body swinging out, until he struck the pile.    He testified, without contradiction, that the car was moving at the rate of about four miles an hour.    Before he got upon the car, and all the time he was on it, the pile of rattan was very near him and in plain sight.    If he had looked about when he was moving on the ground, before getting on the car, he would have seen the pile.    If he had looked afterward, as he was riding, he could not have failed to see it.    He easily could have stepped from the car at any time, as it was moving very slowly.    He had been warned of the width of the car by the remark of the conductor, as well as by his own observation.    The danger of riding on the side of such a car, in a yard generally so crowded with rattan, often piled upon the ground, and with buildings very

near the track, called for great care, even if the plaintiff had not seen the pile which he afterwards encountered. In view of the conditions which the plaintiff knew, or would have known if he had exercised due care, we are of opinion that nothing appears in the evidence which justified him in riding on the side of this car without looking forward in time to see if there were obstructions with which he might come in contact. There was no evidence that he was in the exercise of due care.

*Exceptions sustained.*